UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6162-CR-ROETTGER/SNOW

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BARRY SMITH, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

GOVERNMENT'S MOTION TO DISMISS APPEAL
AS UNTIMELY, OR IN THE ALTERNATIVE,
RESPONSE TO DEFENDANT BARRY SMITH'S
APPEAL FROM ORDER GRANTING GOVERNMENT'S
MOTION FOR PRETRIAL DETENTION

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney, and files its Motion to Dismiss Appeal as Untimely, or in the alternative, Response to Defendant Barry Smith's Appeal from Order Granting Government's Motion for Pretrial Detention, and states as follows:

1. On June 15, 2000, a five count indictment was returned by a Federal Grand Jury in the Southern District of Florida charging eight individuals, including Defendant Barry Smith, with narcotics violations. Defendant Smith is charged in Count One of the indictment which count alleges that from December 1996 through September 1999, Defendant Smith conspired with seven other individuals and with persons known and unknown to the Grand Jury to possess with intent to distribute cocaine. Defendant Smith is also charged in Count Two of the indictment which count alleges that on or about November 28, 1997, Defendant Smith and codefendant Sam

Jones possessed with intent to distribute cocaine. In addition, Defendant Smith is charged with conspiracy to commit money laundering. Finally, Defendant Smith is also named in two forfeiture counts.

2. On June 23, 2000, a pretrial detention hearing was held before United States Magistrate Judge Lurana S. Snow. At the hearing, Defendant Smith was represented by Richard Diaz, Esquire, who appeared in place of Nathan Diamond, Esquire, for purposes of the detention hearing. (On July 28, 2000, Randee Golder, Esquire, was appointed by the Court to serve as Defendant Smith's counsel in this case). At the conclusion of the hearing, Magistrate Judge Snow found that Defendant Smith posed a danger to the community and was a risk of flight. Consequently, Magistrate Judge Snow ordered Defendant Smith to be detained prior to trial. On June 27, 2000, Magistrate Judge Snow entered a written order explaining her reasons for granting the Government's request for pretrial detention as to Defendant Smith.

3. On August 31, 2000, Defendant Smith filed the instant Appeal from Order Granting Government's Motion for Pretrial Detention. No notice of appeal was filed prior to this time.

4. The Defendant's Appeal should be dismissed as it is clearly untimely pursuant to Rule 4(a)(1) of the Magistrate Rules of this Court. In the alternative, the Defendant's Appeal should be denied as Magistrate Judge Snow's factual findings are supported by the record and Magistrate Judge Snow properly concluded that the Government's request for pretrial detention should be granted.

## MEMORANDUM OF LAW

Rule 4(a)(1) of the Magistrate Judge Rules of this Court provides in pertinent part as follows:

> Any person may appeal from a Magistrate Judge's order determining a motion or matter under subsection 1(c) of these rules, supra, within ten (10) days after being served with the Magistrate Judge's order, unless a different time is prescribed by the Magistrate Judge or District Judge. . .

In this case, the Magistrate Judge's Order was entered and served on all counsel of record on June 27, 2000. The instant Appeal, however, was not filed until in excess of two months after the entry of such Order. Under Rule 4(a)(1), any Appeal of the detention Order should have been filed within ten days of being served with the Magistrate Judge's June 27, 2000 Order. No additional time in which to file such an Appeal has been prescribed either by the Magistrate Judge or by this Court. Accordingly, the Defendant's instant Appeal is clearly untimely and should be dismissed as such.

In the alternative, the Defendant is not entitled to the relief sought in his Appeal. A defendant may move the district court to revoke or amend an order of detention pursuant to Title 18, United States Code, Section 3145. In reviewing the Magistrate Judge's denial of pretrial release, the district court must perform an independent review of the record to determine whether the Magistrate Judge properly found that detention was appropriate. *See United States v. King*, 849 F.2d 485 (11th Cir. 1988). If the district court determines that factual issues remain to be resolved or that additional evidence is necessary, the court may conduct an evidentiary hearing to resolve these issues and must then enter written factual findings and written reasons supporting its decision.

If the district court determines that an evidentiary hearing is not necessary, it may determine after a careful review of the pleadings and evidence developed at the pretrial detention hearing that the Magistrate Judge's factual findings are supported and that the Magistrate Judge's

legal conclusions are correct. The district court may then explicitly adopt the Magistrate's pretrial detention order without preparing its own written findings of fact and statement of reasons.

Thus, the district court need only make written findings and a written statement of reasons supporting modification where:

(1) the district court considers evidence which was *not* considered by the magistrate; or

(2) the district court adopts the magistrate's recommendation that pretrial detention is necessary but finds that certain of the magistrate's underlying conclusions or factual findings are incorrect or unsupported by the evidence.

*Id.*, at 491.

In this case, the Government moved for pretrial detention as to Defendant Smith based upon both risk of flight and danger to the community. In addition, the Government invoked the rebuttable presumption, based upon the return of an indictment by a Federal Grand Jury, pursuant to 18 U.S.C. § 3142(e) (Tr.1:4). During the hearing, the Government proceeded by way of proffer which Special Agent Andrew Thompson of the Federal Bureau of Investigation adopted as his testimony (Tr.1:12). Special Agent Thompson was then cross-examined by counsel for Defendant Smith.

The Government's proffer and Special Agent Thompson's testimony revealed that Defendant Smith and his brother Bernard Smith were the leaders of a cocaine trafficking organization in Fort Lauderdale which distributed cocaine throughout South Florida to Northern Florida, Georgia and North Carolina (Tr.1:5). This organization was involved in the distribution of in excess of 350 kilograms of cocaine from December 1996 through September 1999 (Tr.1:4).

4

The organization used male and female couriers to transport the cocaine out of Fort Lauderdale to a meeting point on the Florida Turnpike (Tr.1:5). At this place, drugs were exchanged for drug proceeds (from previous narcotics shipments) (Tr.1:5). The drug proceeds would then be brought back to Defendant Smith and his brother Bernard in South Florida (Tr.1:5). Defendant Smith was the one to whom all the drug proceeds were brought (Tr.1:7). He orchestrated the delivery of cocaine throughout South Florida, Georgia and North Carolina (Tr.1:7). On numerous occasions, Defendant Smith was observed in possession of large amounts of cash, believed to be drug proceeds (Tr.1:7).

The Government also established that Barry Smith had been intercepted on a number of wire communications from the wiretaps which were in place on Barry and Bernard Smith's cellular telephones as well as on the warehouse telephone during Summer 1999 (Tr.1:7). Defendant Smith was intercepted in approximately one-third of ten thousand conversations (Tr.1:23-24). In some of these conversations, Defendant Smith is heard discussing "clothes," a term which members of the Smith organization frequently used to refer to narcotics proceeds (Tr.1:8). There is also a conversation between Defendant Smith and Defendant Willie Walker where they are discussing efforts to launder drug proceeds (Tr.1:8).

The Government further proffered that $60,000 in drug proceeds which was destined for Defendant Smith was seized in North Carolina. The money represented drug proceeds that Defendant Sam Jones was sending back to Defendant Smith in Fort Lauderdale (Tr.1:6).

On one occasion, Defendant Bernard Smith and Defendant Sam Jones were intercepted discussing who could be informing on them (Tr.1:7). In the conversation Defendants Bernard Smith and Jones concluded that the person who was cooperating could not tell the police much

5

because "he didn't know about that route we run." In the Government's proffer, which Special Agent Thompson adopted as his testimony, the Government explained that reference to "that route" referred to the route taken by drug couriers up the Florida Turnpike to the Orlando Service Plaza where an exchange would take place (Tr.1:7-8).

With respect to the seizure of 1.6 kilograms of crack cocaine in North Carolina (as charged in Count Two), the Government proffered that the cocaine came from Defendant Smith in Fort Lauderdale who gave it to Defendant Jones to transport to North Carolina (Tr.1:9). Several independent sources have informed the Government that Defendant Smith was involved in this particular cocaine prior to its seizure (Tr.1:13).

The Government further established that at the meeting with prosecutors and agents, Defendant Smith admitted that he was a drug dealer, but stated that he had not done a drug deal in the past year (Tr.1:48). After the meeting, Defendant Smith immediately contacted Special Agent Thompson. Defendant Smith told Special Agent Thompson that if he were willing to cooperate, the Government would need to give him a "walk" and protection for him and his family (Tr.1:49).

With respect to risk of flight, the Government established that Defendant Smith had shown a propensity for using false identification, including aliases and false Social Security Numbers (Tr.1:9). Further, the Government advised the Court that Defendant Smith's arrest record included false identifications and false Social Security Numbers which were given to law enforcement at the time of his arrests (Tr.1:61-62). Moreover, the Government noted that based upon the amount of cocaine involved in the conspiracy, the defendants, including Defendant Smith, are facing terms of imprisonment in the 235-293 month range (Tr.1:4).

With respect to danger to the community, the Government relied upon the facts of the instant case, including the fact that some individuals had received veiled threats from the organization, the length of incarceration Defendant Smith is potentially facing, as well as the rebuttable presumption.

In the instant Appeal, Defendant Smith argues that the Government's entire case rests solely on the testimony of cooperating defendants looking to reduce their sentences. A review of the transcript of the pretrial detention, however, fails to support the Defendant's argument. The record clearly establishes that the Government's case is not based solely on such testimony. Special Agent Thompson testified about "source" information, and, but for on a few occasions, did not reference individuals looking to reduce their sentences. Indeed, it was defense counsel who continued to assert that the Government's information was only from individuals looking to reduce their sentences. Contrary to Defendant Smith's assertion in this Appeal, as was established during the detention hearing, the Government's case against Defendant Smith is based upon source information, cooperating individuals, surveillance and approximately 10,000 intercepted telephone conversations. Even assuming the correctness of the Defendant's argument in this regard, the credibility of witnesses is not at issue in this stage of the proceedings as a Federal Grand Jury has already determined that there exists probable cause to believe that Defendant Smith committed the offense with which he is charged.

Defendant Smith then argues that the Government alleges that the Defendants tampered with the products which the tractor-trailer trucks were transporting. Again, a review of the transcript of the hearing fails to support Defendant Smith's argument. Special Agent Thompson acknowledged being aware of seals on products which are transported in commerce. The

7

Government, however, has made no allegation that any narcotics were transported within the products, themselves. The transcript reveals that the Government argued simply that the tractor trailer trucks owned by Defendant Bernard Smith's company were utilized to transport cocaine. The Government has never alleged that such transportation occurred within the products themselves.

With respect to Defendant Smith being a flight risk, Defendant Smith argues that the Government's evidence that the Defendant uses false names and social security numbers comes from individuals seeking to reduce their sentences. This argument has no merit. In fact, the Government referred only to "source" information. In addition, Defendant Smith ignores the fact that the NCIC report of the Defendant includes Defendant Smith using false identities and social security numbers. Further, Defendant Smith argues that because he "made himself available" to law enforcement to answer questions, he is not a risk of flight. A review of the transcript from the detention hearing fails to support this argument. There is nothing in the record which would show that Defendant Smith "made himself available." Further, Defendant Smith ignores the obvious implication of his request after the meeting with the prosecutors that he be given a "walk" and protection for him and his family. Obviously, Defendant Smith was seeking a "walk" from something that he was doing wrong, that is, drug dealing, and obviously Defendant Smith believed that protection was necessary from persons with whom he arguably was involved in such drug dealing (Tr.1:61).

With respect to Defendant Smith being a danger to the community, Defendant Smith states that no one has ever received any threats directly from him. The Government, however, never argued that there had been direct threats in this case - the only reference was to veiled

8

threats. The existence of such threats was fully set forth for Magistrate Judge Snow's consideration. At the conclusion of the hearing, Magistrate Judge Snow found that Defendant Smith clearly constituted a danger to the community. Defendant Smith further asserts that he cannot be considered a danger to the community as the Government has been investigating him for over two years without arresting him. Again, this argument has no merit. The length of an investigation does not invalidate the Government's argument that the Defendant is a danger to the community. Rather, by virtue of the rebuttable presumption and the very act of engaging in such behavior for such a lengthy period of time, the Defendant has been, and remains a danger to the community.

The Government, by virtue of the indictment in this case, invoked the rebuttable presumption under 18 U.S.C. Section 3142(e). Indeed, the Magistrate Judge found that the presumption "clearly applies in this case where the defendants are looking at sentences in excess of 200 months" (Tr:1:62). The Magistrate Judge further noted that, although there had been criticism by defense counsel about the strength of the Government's case, "5,000 wiretap conversations is quite a bit of evidence, in addition to everything else that the Government proffered" (Tr:1:62-63). The Court concluded that Defendant Smith clearly constituted a danger to the community and that flight risk was established by the amount of time he was facing and the utilization of other names.

Based upon the facts as set forth in the transcript of the detention hearing and as reiterated herein, the Government submits that the Magistrate Judge's findings were clearly supported by the record and that the Magistrate Judge's legal conclusions are correct. Therefore, the Government submits that no hearing is necessary as the Defendant has failed to come forth with

9

additional evidence to be considered by the Court. Accordingly, the Magistrate Judge's Order should be adopted in its entirety.

WHEREFORE, the Government respectfully requests that the Defendant's Appeal be dismissed as untimely. In the alternative, the Government requests that the Court deny the Defendant's Appeal in its entirety as a *de novo* review of the record clearly establishes that the Magistrate Judge's factual findings are clearly supported by the record and the Magistrate Judge's legal conclusions are correct.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____

KATHLEEN RICE
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 100765
500 East Broward Boulevard
Seventh Floor
Fort Lauderdale, Florida 33394
Tel: (954) 356-7255, ext. 3512
Fax: (954) 356-7336

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by United States mail this 11th day of September, 2000, to: Randee Golder, Esquire, Post Office Box 3756, Boynton Beach, Florida 33424-3756.

_____
KATHLEEN RICE
ASSISTANT UNITED STATES ATTORNEY

10